RUSSELL H. WOODIN, WM. H. ANDERSON AND AMHERST B. CHENEY v. THE SPARTA FURNITURE CO., CHARLES H. LOOMIS AND CHARLES D. STEBBINS. (*Original Bill.*)

AND

CHARLES H. LOOMIS ET AL. v. RUSSELL H. WOODIN ET AL. (*Cross Bill.*)

*Mortgages—Priority of lien.*

A corporation executed a mortgage to trustees, upon its real estate, to secure the payment of its bonds up to $12,000 to be issued for borrowed money, which mortgage was duly recorded and under which it negotiated loans amounting to $6,452.00, issuing its bonds therefor. Some months afterwards it executed a mortgage upon the same property, which was so drawn as to operate as a chattel mortgage upon certain personal property, to secure two indorsers of its commercial paper for $10,000. Soon after this the trustees filed a bill to foreclose their mortgage making the second mortgagees parties, who answered denying any knowledge or information of the prior mortgage. After this the corporation executed and delivered

to said indorsers a bond for $5,500 to be secured by the first mortgage, to secure them from liability then or thereafter to be assumed or incurred as indorsers, but to be held by them as security only. The second mortgagees then filed a cross bill, setting up these facts and claiming the right to share ratably with the other bondholders, in the proceeds of the sale of the mortgaged premises. The indorsers' liability had been fixed and they had exhausted their chattel mortgage security but had not paid the note. The court below made a decree granting the prayer of the trustees and providing for the payment to the second mortgagees of their claim out of the surplus, if any, realized from the sale of the mortgaged real estate. *Held*, that there was no equity in the claim of the indorsers and the decree was affirmed.

Appeal from Kent Circuit. (Montgomery, J.) Argued November 11, 1885. Decided January 13, 1886.

Bill filed to foreclose a mortgage, and cross bill by second mortgagees.

*Maher & Felker*, for complainants.

*Fletcher & Wanty* and *Thomas M. Cooley*, for indorsers:

The issue of the $5,500 bond to the indorsers could not and did not wrong the other bondholders who took their bonds on the distinct understanding that the amount secured by the first mortgage, might be increased to $12,000. The objection now urged that this latter bond was not issued for money borrowed, and therefore not within the terms of the first mortgage, can only be raised by the corporation and in any event is purely technical and without equity. But as a technical point it has no force: *Beecher v. Rolling Mill Co.*, 45 Mich. 103; *Claflin v. Railroad Co.*, 8 Fed. Rep. 118. But this bond is within the terms of the mortgage, being given for money borrowed after its execution, and the mortgage did not require it to be given directly to the lender, although he is in effect secured by the bond issued to the indorsers; and if they had not filed the cross bill the bank which actually made the loan could have done so: *Eastman v. Foster*, 8 Met. 19; *Rice v. Dewey*, 13 Gray, 47; *Moses v. Murgatroyd*, 1 John. Ch. 119; *Phillips v. Thompson*, 2 John. Ch. 418; *Ten Eyck v. Holmes*, 3 Sandford Ch. 469; *Riddell v. Bowman*, 7 Foster (N. H.), 236; *Aldrich v. Martin*, 4 R. I. 520; *New Bedford Institution for Savings v. President of Fair Haven Bank*, 91 Mass. 175. It is a

bond for money borrowed within the meaning of the mortgage : *Duncomb v. N. Y. H. & N. R. R. Co.*, 184 N. Y. 190.

MORSE, J.  The Sparta Furniture Company is a corporation duly organized under the laws of this State.  On the twelfth day of March, 1883, it executed a mortgage to Russell H. Woodin, William H. Anderson, and Amherst B. Cheney, as trustees, to secure bonds to the amount of not exceeding $12,000.  The condition of the mortgage was in these words :

" Provided always, and these presents are upon the express condition, that if the said party of the first part shall and do well and truly pay, or cause to be paid, to the said parties of the second part the sum of twelve thousand dollars, or such part thereof as shall be borrowed by said company, and its bonds issued therefor, payable at Cheney's Exchange in Sparta, in Kent county and State of Michigan, said bonds to be numbered consecutively, and to not exceed in amount the sum of twelve thousand dollars, and shall not bear a rate of interest exceeding eight per cent., and such bonds shall not be issued for a longer period than four (4) years, and shall be duly signed by the president and secretary of said company, and under the seal thereof, and a proper record thereof kept by the secretary of said company on the books thereof, in trust for the several each and every holder of the bonds issued by said company according to the condition of each of said bonds, then these presents and said bonds shall cease, and shall be null and void."

The following bonds were issued by the corporation at the dates and for the amounts as follows :

| | | | |
|---|---|---|---|
| February 27, 1883, to Norman Hinman, | - | - $ | 150 00 |
| February 28, 1883, to Carrie Everett, | - | - | 227 00 |
| March 22, 1883, to Norton Fitch, | - | - | 1,000 00 |
| March 22, 1883, to William H. Anderson | | - | 1,000 00 |
| March 22, 1883, to Jonathan E. Nash, | - | - | 1,000 00 |
| March 22, 1883, to Russell H. Woodin, | | - | 1,000 00 |
| March 22, 1883, to Amherst B. Cheney, | - | - | 1,000 00 |
| March 30, 1883, to J. Van Den Wiltenberg, | - | | 200 00 |
| May 9, 1883, to Levi Phillips, | - - | - - | 200 00 |
| May 12, 1883, to John Symes, | - | - | 200 00 |
| September 12, 1883, to Norton Fitch, | - | - | 475 00 |

All these bonds were payable in one year from their dates, with interest at the rate of 8 per cent. per annum, except

the last one to Fitch, which became due March 22, 1884. June 21, 1884, default being made in the payment of these bonds, the trustees, complainants in the original cause, filed a bill to foreclose the mortgage, making Loomis and Stebbins defendants as subsequent incumbrancers. This bill was taken as confessed by the Sparta Furniture Company, and September 3, 1884, defendants Loomis and Stebbins answered, by which answer they denied any knowledge or information of the mortgage, and if such mortgage was given, denied that it covered and included certain machinery and apparatus situated or used upon the premises described in said mortgage, and asserting paramount rights of their own to such machinery and apparatus. To this answer replication was filed October 1, 1884.

It appears from the record that May 5, 1884, the furniture company made their promissory note to the Fourth National Bank of Grand Rapids, for $10,000 borrowed money, which note was indorsed by the following persons, in the order named: R. H. Woodin, G. R. Walcott, M. Van Wittenburg, F. P. Smith, J. E. Nash, J. R. Harrison, Charles D. Stebbins, Charles H. Loomis. In order to secure said Stebbins and Loomis for indorsements, the said furniture company, February 2, 1884, made and executed to them a real-estate and chattel mortgage in one instrument. This mortgage covered the same real estate mentioned in the first mortgage, and some personal property, and the machinery and apparatus used upon and about the premises. The note given to the bank was duly protested, making the indorsers liable upon it. At the date of the hearing there was due upon it $6,350.25.

November 6, 1884, the Sparta Furniture Company, by its directors, passed the following resolution:

"Resolved, that the president and secretary are hereby authorized and directed to execute and deliver to Charles H. Loomis and Charles D. Stebbins the unissued bonds of this corporation, secured by the mortgage of this company of date of March 12, 1883, payable on demand, to be received and held by said Charles H. Loomis and Charles D. Stebbins as security for any liability they have assumed

or incurred as indorsers of the note or notes of this company, and for any liability they may hereafter assume or incur as indorsers of any renewal or renewals of any note or notes heretofore indorsed by them. But said bonds are not to be delivered to said Loomis and Stebbins until they deliver to the president of the company a receipt acknowledging that said bonds are. held as security only."

And in pursuance thereof the president of the corporation, Russell H. Woodin, delivered a bond for $5,500 to said Stebbins and Loomis in the same form as the others, payable on demand, with interest at 8 per cent. per annum, and received from them the following receipt:

"SPARTA, November, 7, 1884.

"Received of the Sparta Furniture Company a bond of said company for $5,500 secured by mortgage, which we hold as security for any liability which we have or may hereafter incur as accommodation indorsers for said company.

"CHARLES H. LOOMIS,
"CHARLES D. STEBBINS."

January 30, 1885, Stebbins and Loomis filed their cross-bill, setting forth the pleadings and proceedings in the original cause, and their ownership of the $5,500 bond, claiming a right to share ratably in the proceeds of the sale of the mortgaged premises with the other bondholders, and alleging a refusal of the trustees named in the mortgage to recognize their rights as holders of such bond to share as aforesaid. They asked the court for a decree that the proceeds of ,such sale should be ratably applied in payment of the bonds, including the one held by them. The furniture company and the complainants in the original bill were made defendants. The cross-bill was taken as confessed by the corporation, and the trustees Woodin, Anderson, and Cheney answered, denying and putting at issue the claim of Stebbins and Loomis for a ratable share under the mortgage held by the trustees.

Proofs were taken, and the causes went to hearing on pleadings and proofs before Hon. R. M. Montgomery, judge of the Kent circuit, who, on the twenty-fourth day of June, 1885, made and entered a decree in accordance with the

prayer of complainants in the original cause, denying the right of Stebbins and Loomis to share in the proceeds of the sale of the mortgaged premises ratably with the other bond-holders, but subordinating the interest of Stebbins and Loomis to the claim of the others; and providing that after the amount due to complainants in the original cause was paid, and their costs and the expenses of sale, then the said Stebbins and Loomis should receive the amount of their claim out of the surplus moneys, if any there should be, and that no costs be awarded to or against defendants Woodin, Anderson, and Cheney in the cross-cause. From this decree the said Stebbins and Loomis appeal.

From this statement of the case it will be seen that the only point in controversy between these parties is the right of the appellants, as holders of the bond for $5,500, to share in the proceeds of foreclosure ratably with those to whom the first bonds were issued, and who are represented in this suit by the complainants in the original cause, as their trustees. We can see no equity in the claim of Loomis and Stebbins to this ratable share under the first mortgage. At the time of their indorsement of the note to the bank, by which they claim the corporation became indebted to them, they had taken the security under a mortgage to indemnify them to the amount of $13,000. It is evident they did not rely upon the issuing of any bond or bonds under the first mortgage for their indemnity or security, and as late as September 3, 1884, deny in their answer to the original bill filed in this cause any knowledge or information of the existence of any such mortgage. The loan for which they and others were indorsers was made by the corporation, May 5, 1884, and in a greater amount than could have come in under the $12,000 limit in the first mortgage. It is plainly apparent that it was not the intention of the corporation, or any of the parties, at the time to issue a bond or bonds to secure this note, or any part of it, or to indemnify the indorsers, or any of them, upon it. Stebbins and Loomis had no thoughts of taking bonds to secure them against loss by reason of their indorsement, having before that deliber-

ately chosen their security and obtained it. Not until the bonds issued and disposed of under the first mortgage had been long past due, and foreclosure proceedings been instituted and ready for taking proofs, did Stebbins and Loomis take any action towards claiming any share under that mortgage. They then procured the officers of the corporation to issue this bond, and filed their claim under it. At the time this bond was issued the corporation was evidently insolvent, the first mortgage was being foreclosed, the note had been protested for non-payment, and there was nothing to pay either with, except the property covered by the two mortgages. There is no justice in allowing Stebbins and Loomis, after converting the personal property into money, and using it for their benefit under their mortgage, to come into a court of equity and claim a proportionate share to the amount of this bond with the others who rely upon their security taken at the outset of their loans, without any idea or notice that Stebbins and Loomis were to share it with them ; and especially when the latter parties never thought of so sharing until the beginning of this litigation, and parted with no money upon the strength of such sharing.

Under the decree, as it now stands, Stebbins and Loomis will get all there is left of the property after the other bondholders are paid ; and it is difficult to see by what equity they now assert the right to decrease the value of the security to these bondholders, who loaned their money alone upon it, and increase theirs by an additional security which they never dreamed of until the first mortgage was in default and being collected. They procured the officers of the corporation to meet for the express purpose of issuing this bond, and to issue it when the corporation was practically dead as far as carrying on any business was concerned, and hopelessly insolvent. The corporation officers had no power to issue this bond, when its effect was to lessen the security of the original bondholders, to secure indorsers upon a note which was not intended to be secured by bonds when given. The first mortgage was conditioned to pay "the sum of $12,000, *or such part thereof as shall be bor-*

*rowed by said company*, and its bonds issued therefor."
This bond, under which Stebbins and Loomis claim, was
never issued for money borrowed, but procured by these
indorsers to indemnify them.    To allow them to use it to
the injury of the other bondholders, instead of being equita-
ble, would be a fraud upon the rights of the persons who
loaned money to the corporation with a distinct and legiti-
mate reliance upon these bonds.

The decree of the court below is affirmed, with costs of
both courts.

The other Justices concurred.